IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIANE ELAINE SCOTT, Personal Representative of the Estate of Kyle Batt, | Case No. 3:23-cv-00423-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| UNITED STATES OF AMERICA *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Diane Elaine Scott ("Scott"), in her capacity as the personal representative of the estate of Kyle Batt ("Batt"), alleges a statutory wrongful death claim against the United States. The Court has jurisdiction over Scott's claim pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA") and 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636.

Now before the Court is the United States' motion to dismiss for lack of subject matter jurisdiction or, alternatively, for partial summary judgment relating to specific subclaims of Scott's wrongful death claim. For the reasons that follow, the Court grants the United States' motion.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

This case arises out of Batt's death in March 2021 while in the custody of the Federal Bureau of Prisons ("BOP"). Scott alleges that Batt, an individual incarcerated at Federal Correctional Institution Sheridan ("Sheridan") during the relevant time period, suffered from a seizure disorder and that Batt did not receive his anti-seizure medication for several days leading up to his death, despite his numerous requests to the Sheridan pharmacy and other Sheridan officials. (Fifth Am. Compl. ("FAC") ¶ 8, ECF No. 62.) Scott alleges that Sheridan officials' "negligence, negligence per se, gross negligence, and deliberate indifference" were "the direct and proximate cause of Kyle Batt's brain seizure, heart failure, and death[.]" (*Id.* ¶ 20.) Scott alleges wrongful acts and omissions by Sheridan officials including insufficient medical staffing and training and other inadequate medical care. (*Id.*)

## DISCUSSION

I. **LEGAL STANDARDS**

   A. **Rule 12(b)(1)**

"Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Dalfio v. Orlansky-Wax, LLC*, No. 21-56339, 2022 WL 3083323, at *1 (9th Cir. Aug. 3, 2022) ("To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file two types of Rule 12(b)(1) motions[.]"). Specifically, a defendant's "Rule 12(b)(1) jurisdictional [challenges] can be either facial or factual." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023) (quoting *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

The Ninth Circuit has "distinguish[ed] between 'facial' and 'factual' challenges to jurisdictional allegations in a complaint[,]" *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056

PAGE 2 – OPINION AND ORDER

n.1 (9th Cir. 2023) (quoting *Leite*, 749 F.3d at 1121), explaining that a facial challenge "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 n.6 (9th Cir. 2024) (quoting *Leite*, 749 F.3d at 1121). Where, as here, the defendant asserts a facial challenge to jurisdiction, a district court evaluates that challenge under the "familiar Rule 12(b)(6) standard." *Id.* at 1143 n.7 (citing *Leite*, 749 F.3d at 1121); (*see also* Def.'s Mot. Dismiss Lack Jurisdiction ("Def.'s Mot.") at 3, ECF No. 112, "Defendant believes that the Court is empowered to dismiss the challenged allegations raised herein on a motion to dismiss standard under Rule 12(b)(1), by incorporating by reference the publications referenced in [Scott]'s FAC.")

### B.     Rule 56

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## II.    ANALYSIS

The United States moves to dismiss for lack of subject matter jurisdiction or, alternatively, for partial summary judgment relating to several of Scott's subclaims based on Sheridan officials' allegedly wrongful acts and omissions, on the ground that the FTCA's

PAGE 3 – OPINION AND ORDER

discretionary function exception bars those claims. (*See* Def.'s Mot. at 3.) Specifically, the United States identifies two groups of subclaims that the FTCA's discretionary function exception bars: (i) Scott's subclaims relating to BOP staffing, housing, and resource allocation decisions; and (ii) Scott's subclaims relating to BOP decisions regarding whether and to what extent its officers are trained in specific areas. (*See id.* at 8-9, 16.)

A.   **Applicable Law**

"The FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of employment." *Morales v. United States*, 895 F.3d 708, 713 (9th Cir. 2018) (citing 28 U.S.C. § 1346(b)(1)). This waiver "allows the government to be sued 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (citation omitted). An exception to "this broad waiver of sovereign immunity [is] called the discretionary function exception[.]" *Id.* The discretionary function exception "provides immunity from suit for '[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [is] abused.'" *Id.* (citation omitted).

The purpose of the discretionary function exception is "to prevent 'judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). The United States bears the burden of demonstrating that the discretionary function exception applies in a given case. *See id.* (citing *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992)).

///

PAGE 4 – OPINION AND ORDER

The Supreme Court has established a two-step analysis for determining the applicability of the discretionary function exception. *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The court must "determine first whether the act is 'discretionary in nature,' which necessarily involves an 'element of judgment or choice.'" *Morales*, 895 F.3d at 713 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). This "'judgment or choice' requirement is not met where a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536). "If there is such a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Id.* (quoting *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008)).

"If discretion is involved, then [the court must] consider whether the discretion 'is of the kind that the discretionary function exception was designed to shield'—namely, 'only governmental actions and decisions based on considerations of public policy.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536-37). The phrase "public policy" has "been understood to mean considerations 'grounded in social, economic, and political policy.'" *Id.* (quoting *Varig Airlines*, 467 U.S. at 814). "The focus is on whether the actions are 'susceptible to a policy analysis,' not whether the government actually took such public policy [judgments] into consideration when making the decision." *Id.* (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)).

    **B.**    **Analysis**

        **1.**    **Staffing, Housing, and Resource Allocation**

In the fourth subclaim, Scott alleges that the United States is liable for Batt's death based on BOP's "[f]ailure to have medical staff on overnight duty[.]" (FAC ¶ 20(4).) In the sixteenth subclaim, Scott alleges that the United States is liable for Batt's death based on BOP's "fail[ure]

to send enough aid to Kyle Batt thus causing his cellmate to help carry Kyle Batt's stretcher down the stairs to the waiting ambulance." (*Id.* ¶ 20(16).)

The United States moves to dismiss Scott's fourth and sixteenth subclaims on the grounds that "staffing and allocation of resources within BOP facilities is a discretionary judgment or choice left to the federal agency" and "BOP is not required to house every inmate with seizure disorders in prisons containing 24/7 medical care, nor would it be feasible to do so." (Def.'s Mot. at 9.)

### a. Staffing

#### 1) Discretionary Act

With respect to the federal statute, regulation, or policy relating to the alleged "[f]ailure to have medical staff on duty[,]" Scott responds that she "is relying upon the BOP patient care policies outlined in the complaint[.]" (Pl.'s Resp. Def.'s Mot. Dismiss ("Pl.'s Resp.") at 13, ECF No. 121.) Specifically, Scott argues that the Program Statement requires "each institution to have '. . . an Institutional Supplement for providing [twenty-four] hour medical, dental and mental health care" and "a plan for emergency treatment in the absence of [twenty-four] hour on-site medical coverage[.]" (*Id.* at 6, quoting BUREAU OF PRISONS, *Program Statement 6031.04— Patient Care* ("Program Statement") at 9 (June 3, 2014), https://perma.cc/P8F4-J4WY.[1]) The

---

[1] Scott included quotes from the Program Statement in her FAC but did not include its entire content. (*See* FAC ¶¶ 11-14.) The Court finds that it is appropriate to consider the Program Statement as incorporated by reference into Scott's FAC based on her quotations from the Program Statement and reliance on its content as support for her claim. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Alternatively, the Court may take judicial notice of the Program Statement. *See United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of BOP's program statement on patient care).

PAGE 6 – OPINION AND ORDER

United States argues that "nothing in that Program Statement creates a mandatory and specific duty violated by Sheridan officials." (Def.'s Mot. at 13.)

The Court finds that the United States has satisfied the requirements for the first step of the discretionary function exception analysis. Specifically, the Program Statement requires BOP facilities to "have an Institutional Supplement for providing [twenty-four] hour medical, dental and mental health care."[2] (Program Statement at 9.) The Program Statement also requires that each BOP facility have "procedures [to] address . . . [p]rovision of emergency treatment in the absence of [twenty-four] hour on-site medical coverage." (*Id.*) The Program Statement further requires that "[i]nstitutions without [twenty-four]-hour on-site medical coverage, or those with multiple facilities separated by significant distance, . . . have procedures incorporated into the institution supplement by which th[e] [American Correctional Association] standard can be met." (*Id.*)

The Program Statement reflects that BOP maintains discretion in deciding whether to provide twenty-four hour on-site medical coverage. (*See id.*, providing guidance for institutions "without [twenty-four] hour on-site medical coverage[.]") Thus, the Court finds that the United States has satisfied the first step of the discretionary function exception analysis because none of the Program Statement provisions on which Scott relies contain a mandatory or specific duty to provide twenty-four hour on-site medical coverage. *See Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010) ("[A]n agency retains discretion whether to act where no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task."); *see*

---

[2] "[A]n Institutional Supplement . . . is a local version of the national Program Statement (PS) or policy addressing each aspect of the operation of the BOP." *Keen v. Noble*, No. 1:04-cv-05645, 2007 WL 1080549, at *1 (E.D. Cal. Apr. 4, 2007), *findings and recommendation adopted in part, rejected in part*, 2007 WL 2789561 (E.D. Cal. Sept. 20, 2007), *as amended*, 2008 WL 268821 (E.D. Cal. Jan. 30, 2008).

PAGE 7 – OPINION AND ORDER

*also Summerville v. United States*, No. 2:20-cv-10944, 2021 WL 5000691, at *3 (C.D. Cal. Sept. 27, 2021) ("Although the provision contains mandatory language, such as 'will complete' and 'minimum of [twenty-four] hours,' the BOP still retains an element of choice. . . . [T]he provision Plaintiff currently relies on leaves several determinations to the BOP's discretion such as the type of training medical staff will receive or the manner in which medical staff can earn credit hours.").

### 2)      Susceptible to Policy Analysis

With respect to Scott's subclaim based on BOP's alleged "[f]ailure to have medical staff on duty" (FAC ¶ 20(4)), the Court finds that BOP's decision whether to provide twenty-four hour on-site medical staff is susceptible to policy analysis. Specifically, the Ninth Circuit has held that "decisions involving the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit." *Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998) (citation omitted); *Quechan Indian Tribe v. United States*, 535 F. Supp. 2d 1072, 1113 (S.D. Cal. 2008) ("[A]ny claim based upon [the defendant]'s failure to properly manage or supervise their employees is barred by the discretionary function exception."); *see also McDaniels v. United States*, No. 5:14-cv-02594, 2018 WL 7501292, at *11-12 (C.D. Cal. Dec. 28, 2018) (finding that the discretionary function exception barred the plaintiff's claim based on BOP's alleged failure adequately to staff and supervise the plaintiff's housing unit), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Doe v. United States*, No. 1:08-cv-00517, 2010 WL 1904976, at *6 (D. Haw. May 10, 2010) ("[S]taffing and equipping are protected by the discretionary function exception to the FTCA even if the United States abused its discretion or was negligent in the performance of its discretionary functions.") (citation omitted).

///

PAGE 8 – OPINION AND ORDER

Thus, the Court finds that the United States has satisfied both requirements of the discretionary function exception with respect to Scott's allegation that BOP was negligent in failing to provide twenty-four hour on-site medical care.

### b. Housing

Scott alleges in the fourth subclaim that the United States is liable for Batt's death based on BOP's "[f]ailure to have medical staff on overnight duty[.]" (FAC ¶ 20(4).) Based on that allegation, Scott appears to assert both that BOP was negligent in failing to provide twenty-four hour on-site care (addressed above) and in failing to designate or transfer Batt to a facility that provided twenty-four hour on-site care. (*See* Pl.'s Resp. at 23, "The failure of FBOP personnel at FCI Sheriden to transfer Mr. Batt to a higher level of care was an extreme deviation from standard of care and out of step with guidance published by FBOP's parent agency the US Department of Justice" (citing Pl.'s Resp. Ex. 14 at 25, copy of expert medical report of Ryan Herrington, M.D., M.P.H., ECF No. 121-2).) The United States moves to dismiss Scott's fourth subclaim to the extent Scott asserts that "BOP should have placed Batt in a BOP facility that had 24/7 medical care" on the ground that "BOP is not required to house every inmate with seizure disorders in prisons containing 24/7 medical care, nor would it be feasible to do so." (Def.'s Mot. at 8-9.)

### 1) Discretionary Act

With respect to the federal statute, regulation, or policy relating to the alleged "[f]ailure to have medical staff on duty[,]" Scott does not identify or provide any reference to a statute, regulation, or policy relating to housing in her FAC. (*See generally* FAC.) To the extent Scott responds to the United States' argument in its motion, she provides a short quote from a 2001 publication titled *Correction Health Care*. (*See* Pl.'s Resp. at 23.) Scott fails to attach to her response or direct the Court to a copy of the relevant publication.

PAGE 9 – OPINION AND ORDER

The Court finds that Scott has failed specifically to identify any "federal statute, regulation, or policy that specifically prescribed a course of action that the [defendant] was required to follow[.]" *Moretti v. Letty Owings Ctr.*, No. 3:21-cv-01525-SI, 2023 WL 6216279, at *8 (D. Or. Sept. 25, 2023) ("The government has met the requirements of the first step of the discretionary function exception by showing that there was no federal statute, regulation, or policy that specifically prescribed a course of action that the [defendant] was required to follow to prevent [the relevant conduct]. Because there was no federally mandated course of conduct, the [defendant]'s actions or omissions 'involve[d] an element of judgment or choice.'" (first quoting *Terbush*, 516 F.3d at 1129; and then citing *Gaubert*, 499 U.S. at 332)); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) ("[N]owhere does [the plaintiff] allege the existence of a policy that is '*specific* and *mandatory*' on the [defendant]. He does not state the terms of this alleged policy, or describe any documents, promulgations, or orders embodying it. . . . While the burden of proving the *Gaubert* factors ultimately falls on the sovereign entity asserting the discretionary function exception, 'a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss.'") (citations omitted).

### 2)     Susceptible to Policy Analysis

The United States argues that "the decision[] regarding prison placement at specific institutions . . . involve[s] a balancing act [to] ensure the agency is allocating enough of its limited resources to protecting the safety of prisoners, guards, other staff and the public." (Def.'s Mot. at 15.) The Court agrees that, to the extent Scott is asserting a subclaim based on BOP's decision to house Batt at a particular facility, that is the type of decision that implicates social and public policy considerations. *See Cosimano v. Valli*, No. 5:22-cv-00039, 2024 WL 5336763, at *5 (C.D. Cal. Dec. 6, 2024) ("The Ninth Circuit specifically has held that prison officials'

PAGE 10 – OPINION AND ORDER

decisions in assigning inmates to housing . . . come[s] within the discretionary function exception." (citing *Alfrey*, 276 F.3d at 557)), *report and recommendation adopted*, 2025 WL 220948 (C.D. Cal. Jan. 15, 2025); *Benjamin v. United States*, No. 1:16-cv-00248, 2016 WL 5660400, at *4 (D. Haw. Sept. 28, 2016) ("Because the ultimate decision as to [the plaintiff]'s placement (even if negligent) is discretionary, it is protected from FTCA liability under the discretionary function exception.") (collecting cases); *Sharma v. Johnson*, No. 2:13-cv-02398, 2014 WL 2769139, at *4 n.4 (E.D. Cal. June 18, 2014) ("Assigning inmates to [the residential drug abuse program] is among the BOP's discretionary functions . . . , as is deciding whether to transfer an inmate to another facility, and where."); *cf. Alfrey v. United States*, 276 F.3d 557, 568, 571 (9th Cir. 2002) (J. Tashima, concurring in part, dissenting in part) ("Decisions involving cell assignment . . . may be close to the core of statutory, policy discretion afforded correctional authorities in performing their duties. Such decisions are what the Supreme Court had in mind when it held: 'Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' . . . [I]ndeed, that is exactly the same decision (i.e., cell assignment) that we have unanimously agreed . . . is subject to the discretionary function exception.") (simplified).

      Thus, the Court finds that the United States has satisfied both requirements of the discretionary function exception analysis with respect to Scott's allegation that BOP was negligent in failing to designate or transfer Batt to a facility that provided twenty-four hour on-site care.

///

///

        c.        Resource Allocation

        1)        **Discretionary Act**

With respect to Scott's allegation that BOP "failed to send enough aid to Kyle Batt thus causing his cellmate to help carry Kyle Batt's stretcher down the stairs to the waiting ambulance" (FAC ¶ 20(16)), the Court finds that the United States has satisfied the first step of the discretionary function exception analysis.

Specifically, the United States argues that "no such mandatory policy exists" (Def.'s Mot. at 10), and Scott fails specifically to identify any "federal statute, regulation, or policy that specifically prescribed a course of action that the [defendant] was required to follow[.]" *Moretti*, 2023 WL 6216279, at *8 ("The government has met the requirements of the first step of the discretionary function exception by showing that there was no federal statute, regulation, or policy that specifically prescribed a course of action that the [defendant] was required to follow to prevent [the relevant conduct]. Because there was no federally mandated course of conduct, the [defendant]'s actions or omissions 'involve[d] an element of judgment or choice.'" (first quoting *Terbush*, 516 F.3d at 1129; and then citing *Gaubert*, 499 U.S. at 332)); *see also Holy See*, 557 F.3d at 1084 ("[N]owhere does [the plaintiff] allege the existence of a policy that is '*specific* and *mandatory*' on the [defendant]. He does not state the terms of this alleged policy, or describe any documents, promulgations, or orders embodying it. . . . While the burden of proving the *Gaubert* factors ultimately falls on the sovereign entity asserting the discretionary function exception, 'a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss.'" (first quoting *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989); and then quoting *Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992))).

///

PAGE 12 – OPINION AND ORDER

2)     **Susceptible to Policy Analysis**

The United States argues that "the second prong of the discretionary function exception test is clearly met because multiple social, economic and political policy decisions are at issue when BOP considers how to allocate its resources and staff." (Def.'s Mot. at 15.)

With respect to Scott's allegation that BOP "failed to send enough aid to Kyle Batt thus causing his cellmate to help carry Kyle Batt's stretcher down the stairs to the waiting ambulance" (FAC ¶ 20(16)), the Court finds BOP's decision regarding the appropriate amount of personnel to deploy in response to an emergency situation is the type of decision that implicates social and public policy considerations. *See Fang*, 140 F.3d at 1241 ("[D]ecisions involving the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit.") (citation omitted); *see also Alfrey*, 276 F.3d at 565 ("[T]o decide what steps to take in response to a reported threat, an officer must set priorities among all extant risks: the risk presented by the reported threat, along with the other risks that inevitably arise in a prison. Those types of decisions implicate social and public-policy considerations."); *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000) ("[T]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive." (citing *Sabow v. United States*, 93 F.3d 1445, 1451-54 (9th Cir. 1996))); *cf. Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114 (D. Ariz. 1999) ("Decisions by governmental officials as to the day-to-day security needs of a prison, including the number of guards to employ to supervise a given area, where to place emergency alarms, and tactical choices made surrounding the movement of inmates within the institutions are judgment calls and choices based on policy determinations that seek to accommodate 'safety [goals] and the reality of finite agency resources.'").

PAGE 13 – OPINION AND ORDER

Thus, the Court finds that the United States has satisfied both requirements of the discretionary function exception with respect to Scott's allegation that BOP was negligent in failing to deploy the appropriate amount of personnel in response to Batt's medical emergency.

### d. Conclusion

For all of these reasons, the Court grants the United States' motion and dismisses for lack of subject matter jurisdiction Scott's fourth and sixteenth subclaims.

### 2. Negligent Training

In the FAC, Scott alleges that the United States is liable for Batt's death based on BOP's alleged failure adequately to train and supervise its staff and employees. (*See* FAC ¶¶ 18, 20(6), (11), and (13)-(14).[3]) The United States moves to dismiss Scott's subclaims relating to BOP's alleged failure to train and supervise its employees on the ground that those allegations fall under the FTCA's discretionary function exception. (*See* Def.'s Mot. at 16, citing FAC ¶¶ 18, 20(6), (11), and (13)-(14).)

### a. Discretionary Act

The United States argues that "[s]ince [Scott] has failed to point to any mandatory and specific policy requiring correctional officers to be trained in how to treat seizures or operate medical equipment, and since no such policy exists, the first prong of the discretionary function exception is met." (Def.'s Mot. at 17.) Scott's response includes quotations from the Program Statement, which she argues requires a "[four] minute response to life or limb threatening medical emergencies" and "a team of 'first-responders' established for each shift with documented training in first aid and CPR[.]" (Pl.'s Resp. at 6, quoting Program Statement at 9.)

---

[3] At oral argument, Scott's counsel agreed to strike the allegation that "[t]he officers failed to ask Kyle Batt's cellmate how to handle a seizure patient" (FAC ¶ 20(14)) as no longer supported by the facts in the record. Thus, the Court strikes that allegation from the FAC.

However, Scott fails specifically to identify any federal statute, regulation, or policy that mandates specific training relating to seizures or gurneys. (*See* Program Statement at 9, requiring "training in first aid and CPR."); *cf. Banuelos v. United States*, No. 2:15-cv-03273, 2016 WL 6818353, at *5 (C.D. Cal. July 15, 2016) (finding that the United States satisfied the first step of the discretionary function exception analysis because "Plaintiff cites the [BOP Program Statement 6031.04] policy that '[c]ompleted radiographic reports will be reviewed within two working days, dated, and initialed by the [clinical director] prior to distribution and filing. . . [but] Plaintiff does not allege that the radiographic reports were not reviewed, dated, or initialed prior to distribution and filing").

Further, to the extent Scott alleges that BOP failed to "adequately train and supervise its staff and employees to ensure that prisoners with serious medical conditions receive timely and appropriate medical care" (FAC ¶ 18), the Court finds that "this does not constitute a 'mandatory and specific' directive." *Banuelos*, 2016 WL 6818353, at *5 (quoting *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015)); *see also Summerville*, 2021 WL 5000691, at *3 ("Plaintiff cites to the requirement that the Clinical Director must 'ensure new health care providers are properly trained and oriented prior to assignment to independent duty.' . . . [T]his provision does not require sufficiently specific action to deprive the BOP of discretion.") (citation omitted); *Banuelos*, 2016 WL 6818353, at *5 ("Plaintiff cites the [BOP Program Statement 6031.04] policy that . . . [t]he reviewing physician must ensure that timely, appropriate follow-up actions are initiated on all abnormal findings, and that any actions taken are documented in the Progress Notes of the inmate's health record.' . . . To the extent that Plaintiff focuses on the directive to ensure 'timely, appropriate follow-up actions,' the Court finds that this does not constitute a 'mandatory and specific' directive.") (simplified).

Thus, "[b]ecause there was no federally mandated course of conduct, the [defendant]'s actions or omissions 'involve[d] an element of judgment or choice.'" *Moretti*, 2023 WL 6216279, at *8 (first quoting *Terbush*, 516 F.3d at 1129; and then citing *Gaubert*, 499 U.S. at 332).

### b.      Susceptible to Policy Analysis

The United States argues that it has satisfied the second step of the discretionary function exception analysis because "[d]ecisions regarding the balancing of staff and which staff are specifically trained in particular tasks . . . necessarily involve social and economic decisions based on the government's limited budget and resources." (Def.'s Mot. at 17-18, citing *Fang*, 140 F.3d at 1241.) The Court agrees.

Courts have consistently held that "[c]laims based on 'negligent and reckless employment, supervision[,] and training' of government employees 'fall squarely within the discretionary function exception.'" *Kornberg v. United States*, 798 F. App'x 1019, 1020 (9th Cir. 2020) (quoting *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000)); *see also Kelly v. United States*, 241 F.3d 755, 763 (9th Cir. 2001) ("The extent of training with which to provide employees . . . [is] surely among those [decisions] involving the exercise of political, social, or economic judgment." (quoting *Burkhart v. Wash. Metro. Area. Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997))); *Fang*, 140 F.3d at 1241 ("[D]ecisions regarding the equipment to be kept at the various stations, and the EMT training level of the persons stationed there, are fully protected by the discretionary function exception to the FTCA."); *Kristiansen v. United States*, No. 3:24-cv-01719-IM, 2025 WL 2049290, at *7 (D. Or. July 22, 2025) ("Plaintiff is essentially alleging that Defendant should have provided more training, or different training, or better training. These are all policy decisions shielded by the discretionary function exception."). Thus,

PAGE 16 – OPINION AND ORDER

the Court finds that Scott's subclaims based on BOP's alleged failure adequately to train and supervise its staff are susceptible to policy analysis.

### c. Conclusion

For the reasons stated, the Court finds that, to the extent Scott asserts claims based on BOP's alleged failure adequately to train and supervise its staff, the discretionary function exception bars those claims. Accordingly, the Court dismisses those subclaims (i.e., FAC ¶¶ 18, 20(6), (11), and (13)) for lack of jurisdiction.

## CONCLUSION

For the reasons stated, the Court GRANTS the United States' motion to dismiss (ECF No. 112), and dismisses paragraphs 18, 20(4), (6), (11), (13), and (16) (and strikes paragraph 20(14)) from the FAC.

**IT IS SO ORDERED.**

DATED this 19th day of August, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge